STATE of Missouri, Respondent,

v.

Jamaal LISTON, Appellant.

No. ED 81601.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 24, 2003.

S. Kristina Starke, Assistant Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, SR., Judge.

Appellant, Jamaal Liston ("defendant"), appeals the judgment of the Circuit Court of the City of St. Louis following a jury trial finding him guilty of robbery in the first degree (Count I), section 569.020, RSMo 2000,[1] but not guilty of the charge of armed criminal action (Count II), section 571.015. Defendant was sentenced to ten years for Count I to be served in the Missouri Department of Corrections to run concurrently with a separate cause of action. We affirm.

On the morning of March 25, 2001, at a pay phone near the intersection of Stratford and Goodfellow in the City of St. Louis, Tyrone Polk ("Polk") was robbed of money, a cell phone, and a blue handbag. During the robbery, Polk was on the ground where he had a view of the license plate number and the driver of the getaway vehicle. After the robbery, Polk got into his vehicle and chased the robbers until he lost sight of them. Later that morning, defendant was pulled over and arrested while driving a stolen vehicle that looked similar to Polk's description of the getaway vehicle used in the robbery. Later that same day, Polk was called to the police station to view a line-up. At the line-up, Polk identified defendant as the person who drove the getaway vehicle.

On June 12, 2002, after the close of evidence in defendant's trial, the jury retired to deliberate at 3:38 p.m. At about 4:55 p.m., the jury communicated that "[y]our honor, we feel we are a hung jury." The trial court's response to the jury was to "[p]lease continue with your deliberations." No objections were made by either party to this response. At 7:10 p.m., the jury communicated to the trial court that "we have been deadlocked for the last couple of hours, eleven to one, during our deliberations. The results are still the same." Again, the trial court's response to the jury was to "[p]lease continue your deliberations." Neither party objected to this response, but defense counsel did suggest that "[w]e could read the hammer."

A little before 9:00 p.m., the jury communicated to the trial court that "[w]e are still deadlocked." Shortly thereafter the trial court addressed the jury and thanked the jury for its efforts. The trial court then told the jury to "[g]o home and get a good night's sleep," and to come back in the morning for further deliberations. Neither party made an objection to this order. The jury resumed its deliberations the next morning on June 13, 2002, at 9:30 a.m. and returned a verdict at 12:30 p.m.[2]

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

2. In a court order signed by the trial court on June 13, 2002, which is included in the legal file on appeal, it states that: "[j]ury returns at 9:30 a.m. from evening recess and continues deliberations." Defendant's brief relies on this court order in stating that the jury returned at 9:30 a.m. However, the trial transcript states that the trial court told the jury on June 12, 2003, to return at 11 a.m. the next day for deliberations. The state's brief cites to this portion of the trial transcript. No mention was made in the transcript as to when the jury actually returned. According to Rule 81.15(d), "[i]f there is any dispute concerning the correctness of any legal file or transcript, the party disputing the correctness thereof shall designate in writing to the appellate court those portions of the legal file or transcript that are disputed." Neither party proceeded under Rule 81.15(d) to dispute the correctness of the legal file or the transcript. Therefore, we find that 9:30 a.m. was the time the jury returned, as evidenced by the signed order of the trial court.

In his only point on appeal, defendant asserts that the trial court erred in failing to give what is commonly referred to as the "hammer instruction." Defendant asserts that by ordering the jury repeatedly to continue its deliberations, without giving the jury the hammer instruction, the trial court compelled the jury to enter a verdict contrary to the determination of innocence by individual jurors.

Defendant's counsel failed to object during jury deliberations concerning the failure to give the hammer instruction, and did not raise the issue in his motion for a new trial. Therefore, review in this case is limited to plain error pursuant to Rule 30.20. *State v. Collins*, 920 S.W.2d 205, 206 (Mo.App. E.D.1996). To be entitled to relief under the plain error rule, a defendant must show manifest prejudice affecting his substantial rights. *State v. Winfield*, 5 S.W.3d 505, 516 (Mo.banc 1999). Specifically, the defendant must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* When reviewing an argument for plain error, the burden is on the defendant to prove the error had a decisive effect on the jury's determination. *Id.*

The hammer instruction reads as follows:

You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt. MAI CR(3d) 312.10.

It is within the trial court's discretion to decide whether or when the hammer instruction should be read. *State v. Garrison*, 943 S.W.2d 847, 849 (Mo.App. E.D.1997). The hammer instruction may be given "when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI CR(3d) 312.10, Notes on Use 2. If it appears from the circumstances that a verdict is coerced by the court, the verdict must be overturned. *State v. McNail*, 767 S.W.2d 84, 86 (Mo. App. E.D.1989).

In this case, within three and one-half hours after the jury retired to deliberate, the trial court twice gave a response to the jury to "[p]lease continue your deliberations" after the jury had informed the trial court that it was deadlocked. The jury was dismissed later that night, and returned the next day and reached a verdict. There is nothing in the record to support a finding that this response by the trial court coerced a verdict. In fact, at no time was the trial court aware as to which charge the jury was deadlocked on or whether the jury was in favor of a guilty or not guilty verdict for either charge. Furthermore, defendant cites to no case law to support his contention that it constitutes manifest prejudice *not* to submit a hammer instruction after the jury has informed the trial court that it is deadlocked. The cases that defendant cites to which analyze the hammer instruction are cases in which a defendant argued that the trial court coerced a jury verdict by giving the hammer instruction. *See Id.* at 86–87 (holding that verdict reached by jurors

after more than eight hours of deliberation, after twice informing the court that they were deadlocked, and after being given the hammer instruction, was set aside as a product of coercion); *State v. Broadux*, 618 S.W.2d 649 (Mo.banc 1981) (finding that trial court did not abuse its discretion by reading the hammer instruction). It was within the trial court's discretion to decide not to give the hammer instruction to the jury. We find that manifest prejudice did not occur through the trial court's decision not to give a hammer instruction to the jury.

Based on the foregoing, we affirm the judgment of the trial court.

PAUL J. SIMON, P.J., and KATHIANNE KNAUP CRANE, J., concur.